The next case today is Robson v. Xavier Gomez v. Merrick B. Garland, Appeal No. 20-2106. Attorney Kim, please introduce yourself for the record and proceed with your argument. Thank you. Good morning, Your Honors. May it please the Court? Attorney Sang-Yop Kim for Petitioner. Judge Lynch, may I reserve one minute for rebuttal? Yes, certainly. Thank you. Let me start with this land ownership-based social group claim. The most important question here is whether Petitioner sufficiently raised the argument that landowners in Brazil, without anything more, constitute a particular social group. The answer to this question is yes, and I will quote what he argued before the BIA. He said, land ownership provides a definite benchmark separating Brazilians who own the land and those who do not. That goes for the particularity element. Even for social distinction, he argued, landowners are assigned a distinct social and political status that differentiate them from Brazilians who do not own the land. On top of this, Petitioner advanced the same argument before the IJ. And as a response, agency, other than the particularity element, focused solely on the land ownership in Brazil. So the government's argument that at this point, this issue was not raised or otherwise unexhausted before the agency is incorrect. Now against this backdrop, this court should vacate the BIA's conclusion on three points of the particularity, social distinction, and nexus. The particularity element requires that a proposed social group to be a discrete class and has a definable boundary so that the society recognizes members. And that is precisely the case for landowners in Brazil. Counsel, if there was substantial evidence supporting the agency's determination of no nexus, then these other issues kind of disappear. So why don't you start with that? Thank you for the question, Your Honor. So for the nexus, there are two errors the agency committed. The first one is the factual determination of the agency's conclusion. And the second one is the legal error where the agency failed to apply the mixed motive standard in assessing the nexus of these land invaders. So let me start with a legal question. The agency concluded the only motive that these land invaders had was a financial motive to turn a profit. But what's troubling is if you look at the page 16 of IJ's decision, he actually cites and quotes an owner of the petitioner's evidence, the purpose of MST, who are the land invaders, that they occupy the land or otherwise give social activism and give pressure to the landowners to give up the land for the purpose of achieving the land reform. So based on this record, what the agency should have done at minimum is apply the mixed motive standard to determine whether there was only one motive of the financial motive or... Counsel, I thought that the evidence was that this MST group killed and harassed not only the owners of the land, but tenants on the land and others, and that they use this as a sort of extortion scheme to keep themselves going. So it seems to me that since even if one accepts your particular social group hasn't been waived, that the evidence does not show a nexus here between that particular social group, given the nature of the extortion and violence that is imposed by this group on a very large number of people. To answer your Honour's question, there can be separation between the landowner who owns the land and the purpose of MST attacking the land, and for that means they occupy the land, they put fire on the land, or they sell the land, or otherwise give the pressure to the landowners so the landowners can give up the land for the purpose of achieving the land reform. So there can't be a separating link only because they are attacking the land and they are attacking other people who are related to the land, such as farm managers or employees, and then it does not go into the nexus because the petitioner as a landowner still owns the land, and even though the BI did not address this question of whether that harm rises to the level of persecution, the extortion persecution, I'm sorry, the economic persecution can be the basis for persecution, and petitioner as the owner of the farm, if he gets severe financial disadvantage, that rises to the level of persecution, then the nexus standard has been established. That is at least the petitioner's position. If I may... The easy case would be if he was, you know, not on his land and beaten up, and MST does it because they're obviously doing violence against people who are landowners, and his status as a landowner is why he's being attacked. The difficulty is how to think about it, at least to me, when the objective of MST is to acquire the land. To respond to your question, their objective is not only acquiring the occupation of the land. That's one means to do it. What they want is they want to give pressure to the landowners to give up the land so that the land distribution can happen to the people, not only a few. But in what sense is he being targeted by this activity in consequence of his status as a landowner? He's losing a substantial amount of the financial loss. But that's a fact of an injury that's occurring to him in consequence of the action taken. I don't doubt that he's injured by that. But what is the indication that the reason he is being singled out for that injury is because he's a landowner? That makes sense. Right, because that belongs to his... That's what you need to show, right? Yes, Your Honor. And if the court agrees that the economic persecution can be the basis, and obviously it has to be the severe level of the persecution, then the petitioner can also show the nexus by the harm that he's getting on his land, because the land that belongs to him, and if he gets the attack by MST members, then he is facing and he has faced substantial loss of the finance, the money. So it is our position that that goes the nexus. Maybe, but ask it one other way. You tell me if this makes any sense. Take it, if there was a land owned, say, by the Brazilian government, your position would be MST might have a financial benefit from taking over that land, but they wouldn't do it because that wouldn't further their aim of targeting landowners for the purpose of land reform. So the reason they targeted this land is because it's land owned by a landowner. Is that the idea? No, at least based on the record, I don't think MST members differentiate who owns the land or not. That's the problem. That's what I guess I'm getting at, because that just reveals that although he's harmed by this activity, and although the way he's harmed is that land he owns is taken, the reason it's taken, at least on this record, is not because it belonged to a landowner. And yet, in order for him to show the nexus, he's got to show that his status as a landowner is why it was taken. But if we, let me take one more shot to try to convince you. So the record shows that there are only a few people who own the land. There may be some other areas where the government owns the land. And if the MST's purpose is achieving the land reform by taking any land that is purchased by just a few landowners, it is our position that there is still a nexus that is established by MST's purpose of achieving the land reform and then the financial loss that petitioners face and will face. Thank you. Attorney Kim, please mute your audio and video. Attorney Schaffner, please unmute your audio and video. Introduce yourself for the record and proceed with your argument. Good morning. May it please the court, Jane Schaffner for the respondent. We agree with Petitioner that the threshold issue in this case is whether Mr. Gomez exhausted the particular social group of landowners in Brazil. Before the immigration judge, he argued that his particular social group was landowners in Brazil who oppose corruption. And the immigration judge in his decision four separate times on pages 100 and 101 rejected that particular social group and reasserted that particular social group as Brazilian landowners who oppose corruption. Before the board, Petitioner correctly notes that in his notice of appeal, he asserted that the immigration judge erred by concluding that Brazilian landowners are not a particular social group. But that is not in fact what the immigration judge found. As I mentioned, the immigration judge on four separate occasions defined, analyzed the particular social group. And your position is that if I look at the record, I'll see that the way that the IJ articulated the social group is the only way that it was defined to the IJ? Yes, that in the transcript at pages 144 to 146, counsel below articulates his particular social group to the immigration judge as Brazilian landowners who oppose corruption. That's how the immigration judge analyzed the issue. And then in his brief to the board, he twice articulates his group as Brazilian landowners who oppose corruption. What does the BIA then do in response to that brief? Does it say that, no, you only argued below to the IJ? In his brief to the board, he argues... Your understanding of how the board responded to that brief was what? That the board again construed the particular social group as Brazilian landowners who oppose corruption. The board does not appear to have understood that there was any argument before it that the particular social group was simply Brazilian landowners standing alone. And it was reasonable for the board to make that assumption because it is impermissible to articulate a new social group to the board in matter of WYC and HOB. The board has made clear that it cannot consider a new group for the first time in briefing. But the board doesn't say that. In other words, the way you're recounting it is that the brief to the board articulates the social group in broader terms than it was presented to the IJ. The board then rejects it. Do you disagree with that? Yes, I'm sorry. I do disagree that in the brief to the board, Mr. Gomez twice articulated his particular social group. This is at pages 43 and 45 of the record. Twice he says, my particular social group is Brazilian landowners who oppose corruption. In fact, he spends some time. Just so I'm clear, you also acknowledge that there are other statements in the brief to the board that were not so qualified? Correct. He does talk about landowners generally. He talks about political opinion generally. He talks about corruption generally. The board reasonably read the brief to it as tracking the position that had been set forth to the IJ and that the IJ understood to be the one presented to it. Correct. And in the brief, therefore, you think that that's the only one that was preserved. And so we can't now shift in petitioning for review of the Board of Immigration Appeals decision by now saying, no, I won't argue the broader view. Correct. In fact, in his board brief, and again, this is at pages 43 to 45, he says, I am specifically narrowing my proffered particular social group by reference to opposition to corruption. It was a very intentional decision to narrow the group by adding the clause who oppose corruption. And that tracks what the IJ did. And that's how he argued it before the board. And that's what the board understood was before it. So we would argue that this group now before this court, Brazilian landowners standing alone was not raised sufficiently to the agency. We would also argue that by focusing on Brazilian landowners without reference to whether they have corruption. Thank you. That petitioner has waived any challenge to the decision that the agency actually rendered in this case regarding Brazilian landowners who oppose corruption. But even assuming no waiver, in order to establish membership in a particular social group, you have to establish immutability, particularity, and social distinction. A failure to show any one of those three is fatal to your particular social group claim. Here, the agency found that he failed to establish both particularity and social distinction. Either one of those would be sufficient. That particularity, there's no clear benchmark for who's included in Brazilian landowners, small landowners, large landholders, tenant farmers. Yeah, I thought the record also showed that he didn't actually put on any evidence that he did oppose. As in the particular social group, he challenged at most when he was asked to pay a bribe. He said, no, I don't pay bribes. So am I correct about what the record shows? That is correct. With respect to his encounter with the port officials at the airport, sorry, not at the airport, at the port of Santos, he provided a variety of testimony. He talked about the bribe not being fair, that it was too much, that it was four times the amount of the merchandise he was trying to import. He did say, I'm against the bribery, but it's not clear that that's a political opinion. But even if it were a political opinion, there's no indication that the port officials knew he held that political opinion before they solicited for him for a bribe. And the evidence suggests that his subsequent criminal conviction is not as a result of a political opinion, but his own criminal conduct by failing to disclose and pay taxes related to his shipment. So this panel has many paths it can go down in this case. The exhaustion path, the waiver path, the particularity and social distinction path, and then the nexus path that he failed to submit sufficient evidence that the people who intruded on his land failed to submit sufficient evidence would compel reversal of the conclusion that the people who intruded on his land were interested in the land for purposes of profit, and that the people who targeted him at the port were anything other than money. Suppose I thought that the record might compel the conclusion that although they were interested in land for profit, they were also interested in it for the purposes of promoting the objective of land reform. How would that affect the nexus analysis? His proffered protected grounds are Brazilian landowners who oppose corruption and political opinion. He hasn't shown evidence that shows that the MST was interested in him as a Brazilian landowner who opposes corruption, nor has he shown that they were interested in him because of any political opinion. In fact, the political party he asserts membership in, he did not join until fairly recently. He says within the last couple of years his land was invaded in 2009. So we would argue he just simply hasn't submitted the evidence that would show that there was a protected ground motivating the MST. And just to be clear, because I just want to make sure you didn't make this point, and I just want to give you a chance to see if you are going to make it, insofar as he could be understood to be asserting his particular social group to be just landowners full stop, and insofar as the record could be read to compel the conclusion MST was taking the land not just for profit, but for purposes of promoting land reform, would there then be evidence of a nexus? And if not, why not? I'm not taking that. May I continue? Yes, please. Thank you. I'm not taking that position because I have to be very careful not to get in front of the agency. The agency analyzed the group as landowners who oppose corruption, not simply as exhausted. We would recommend that you remand to the agency to make that determination in the first instance. Thank you. Thank you. Thank you. Thank you very much. Attorney Schaffner, please mute your audio and video. Attorney Kim, please unmute your audio and video. Judge Lynch, with your permission, Attorney Kim may proceed. May it please the court, Your Honors. Judge Lynch, if I may, unless the court has any questions, I can wait. There will be better time. Okay. Thank you, Mr. Kim. We'll accept your concession. Thank you. Thank you. That concludes argument in this case. Attorney Kim and Attorney Schaffner, you should disconnect from the hearing at this time.